**Guilford GLAZER, Plaintiff,**

**v.**

**Jerome S. GLAZER et al., Defendants.**

**Civ. A. No. 10567.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 12, 1967.

Bernard Marcus, R. Emmett Kerrigan, New Orleans, La., for plaintiff.

Harold R. Ainsworth, New Orleans, La., James C. McKay, Alfred H. Moses, Washington, D. C., for defendants.

RUBIN, District Judge:

Guilford Glazer sued his brothers, Jerome and Louis, to recover damages resulting from their breach of a contract with him when they removed him as an officer and director of various corporations in a complex controlled by the family. After the jury returned a verdict in favor of the plaintiff, Judge Frank B. Ellis granted a motion for judgment notwithstanding the verdict, and entered judgment for the defendants. The plaintiff appealed, and the Court of Appeals reversed. Its mandate to this court is:

> "We * * * remand for a remittitur and, if the plaintiff refuses, we require a new trial limited to the issue of damages." 374 F.2d at 394.

The defendants have filed a motion to reopen the record for the admission of additional evidence to be considered by the court in determining the amount of the remittitur. They seek to introduce additional evidence both with respect to events "which were occurring or had occurred at the time of trial," and evidence of events which occurred after the time of trial. They contend that this court has power to hear such evidence and that the Court of Appeals "intended to permit this Court, during the remittitur proceedings, to hear additional evidence on the damages issue." They therefore urge that the Court "exercise its discretion by hearing additional evidence."

## THE MANDATE

The first step is to consider the mandate of the Court of Appeals. It does not in terms say anything about additional evidence. But there are parts of the court's opinion from which counsel seek to derive sanction for the introduction of additional evidence. For instance:

1. In discussing whether the trial court properly refused to compel the discovery of the plaintiff's income tax return, the court said, " * * * the trial judge on remand may wish to re-examine

this decision in the course of further proceedings on the damages issue." 374 F.2d at 414.

2. In discussing amounts agreed to be paid as compensation to the plaintiff from a West Virginia corporation in which there were outside shareholders, the court said, " * * * on remand, the plaintiff will have the opportunity to prove that the outside shareholders * * * did consent to the agreement." 374 F.2d at 411.

3. The court observed that "we are remanding the case for re-determination of the damages." 374 F.2d at 412. Moreover, the court referred to errors of law, and defendants contend that this would indicate these errors should be corrected on remand.

4. The Court of Appeals did not itself set the amount of remittitur. It is contended that the Court of Appeals could itself have entered the remittitur on the basis of the existing record, and therefore the fact that it remanded the case indicates that it intended this court to hear additional evidence.

■ The mandate must of course be "interpreted reasonably and not in a manner to do injustice." Wilkinson v. Massachusetts Bonding and Ins. Co., 5 Cir., 1926, 16 F.2d 66, 67; quoted in Bailey v. Henslee, 8 Cir., 1962, 309 F.2d 840, 844. In attempting to interpret the mandate, let us examine each of these arguments.

In saying that the trial court may wish to re-examine the decision relative to the discovery of the plaintiff's income tax returns in the course of further proceedings on the damages issue, it is at least as likely that the Court of Appeals was referring to a new trial in the event a remittitur was refused by the plaintiff as that it was referring to the proceedings to determine the amount of the remittitur. If the court had intended that these documents should be produced for consideration in determining the remittitur, it could easily have said so. And in that event, it likely would not have expressly sustained Judge Ellis' ruling.

The observations concerning the West Virginia corporation do refer categorically to an opportunity "on remand." But the court refers to an opportunity for the *plaintiff* to prove a fact on remand. Taken in context, this may mean merely that, since it is the plaintiff who may elect to have a new trial, it is likewise the plaintiff who may thus have this opportunity.

The fact that the case has been remanded for redetermination of damages does not indicate how the determination is to be accomplished. The Court of Appeals said that the case is remanded for the entry of "a remittitur and, if the plaintiff refuses * * * a new trial limited to the issue of damages." 374 F.2d at 394. This would indicate that there is to be a new trial only in the event the plaintiff refuses to accept the remittitur.

The form of the mandate is not unusual. When a Court of Appeals remands a case on the basis that the judgment is excessive, it frequently does not enter the remittitur itself, but orders the trial court to do so. See, e. g., Plumbers & Steamfitters Union v. Dillion, 9 Cir., 1958, 255 F.2d 820; Baldwin v. Warwick, 9 Cir., 1954, 213 F.2d 485; Cominskey v. Pennsylvania Railroad Co., 2 Cir., 1956, 228 F.2d 687.

Where the Fifth Circuit has wished to direct a trial court to consider additional evidence it has expressly done so. Thus, in DuBreuil v. Stevenson, 5 Cir., 1966, 369 F.2d 690, the court said, "We remand the case to enable the district court to reconsider the amount awarded for attorneys' fees. We suggest that there be some showing made as to what amount would be reasonable attorneys' fees in a case of this kind." See also Theriot v. Mercer, 5 Cir., 1959, 262 F.2d 754, 316 F.2d 635, rev'd, 377 U.S. 152, 84 S.Ct. 1157, 12 L.Ed.2d 206, in which the court stated that judgment for the defendant was to be entered "unless plaintiff * * makes a satisfactory showing that on another trial evidence of sufficient probative force to justify submission of the

cause to the jury will be offered * *." 262 F.2d at 761.

On occasion the Fifth Circuit has expressly directed the trial court to hear evidence on remand of a jury case. Thus in Car and General Ins. Corporation v. Thibaut, 5 Cir., 1947, 161 F.2d 657, 659, the mandate was, "The judgment is reversed and the cause is remanded with directions that judgment be entered for the defendant unless *on a pre-trial hearing* the plaintiff can show that other evidence is available which might reasonably change the result, in which event a new trial may be granted." (Emphasis supplied.) After a writ of certiorari was granted and the judgment was reversed, 332 U.S. 751, 68 S.Ct. 79, 92 L.Ed. 338, the order granting certiorari was vacated, and the writ was denied. 332 U.S. 828, 68 S.Ct. 205, 92 L.Ed. 403. Then the court permitted affidavits to be filed, as reported in E.D.La., 1949, 90 F.Supp. 222, but concluded that the evidence brought forward in them was not sufficient to grant a new trial. It will be noted that the District Court did not hear evidence on the remand, or reach any determination of fact; it merely decided whether the affidavits presented made a prima facie case that there was sufficient evidence available to justify granting a new trial.

The situation in the *Thibaut* case differed from the one presented here: in *Thibaut* the question considered by the Court was one that had never been and would never be put to a jury.[1] It was whether a new trial should be granted after the earlier judgment had been reversed.

■ Courts can, of course, consider evidence in determining whether a new trial should be granted.[2] But this is a far different question from determining the amount of a remittitur because, by definition, in determining the amount of a remittitur a court is saying: you must try this case again unless you agree to accept an amount that the jury might properly have awarded you.[3]

■ It is almost a misnomer to ask if a mandate grants permission to the court mandated. A mandate is in terms a command. In *Thibaut* the Court of Appeals did not say to the trial court, "You may hear evidence if you choose." The command was to enter a judgment unless evidence was presented to justify a new trial. The command here is to enter a remittitur and, if the plaintiff rejects it, to give him a new trial.

## THE SEVENTH AMENDMENT

If, however, the mandate should be construed as leaving to this court the decision whether it should hear evidence on the question of the amount of the remittitur, the question arises whether this court should do so. And one question to be resolved in reaching that determination is the interpretation of the Seventh Amendment which provides:

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right to trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

The Supreme Court held, almost a century ago, in Northern Pacific Railroad Co. v. Hebert, 1886, 116 U.S. 642, 6 S.Ct. 590, 29 L.Ed. 755, that the remission *by the plaintiff* of a part of a

---

1. The result reached in *Thibaut* likewise presented no constitutional problems. "The re-examination that the Constitution forbids is a new inquiry into the truth of the *facts* ascertained by a verdict." Thorndike, Trial by Jury in United States Courts, 26 Harv.L.Rev. 732, 736 (1913).

2. 2B Barron & Holtzoff (Wright ed.) § 968, p. 246; 5 Moore's Federal Practice

¶ 43.13, p. 1354; 6A Moore's Federal Practice ¶¶ 59.08 [3] and 59.10, pp. 3789–3790 and 3869.

3. See generally James, Civil Procedure, p. 322, et seq. (1965) and 6A Moore's Federal Practice ¶ 59.05 [3], p. 3737, et seq.

jury verdict, followed by a judgment for the sum remaining, did not deprive *the defendant* of his constitutional right to have the question of damages tried by a jury. This decision was re-examined and approved in Arkansas Valley Land & Cattle Co. v. Mann, 1889, 130 U.S. 69, 9 S.Ct. 458, 32 L.Ed. 854. Whether the constitutional right of the plaintiff to a jury trial is abridged when a court orders a new trial conditioned on a remittitur appears never to have been raised in the Supreme Court, although the constitutionality of the practice is tacitly approved in both these cases. But in neither case is it intimated that a court should or indeed constitutionally may hear evidence on the question of the amount of the remittitur. The parties have not been able to cite a single case decided by either the federal or state courts since the adoption of the Constitution in which evidence has been heard on the question of amount of remittitur, or in which the motion here involved was made and the court refused to hear evidence.

■ That something has never been reported done is not of itself reason not to do it, particularly in an age when men are reaching new frontiers in science almost daily. But the reason for permitting remittiturs is in itself the reason for avoiding a hearing on the issue of its amount. The purpose of permitting the remittitur is to avoid holding a new trial. "[T]he court, without invading the province of the jury, might permit the plaintiff, *in lieu of a new trial,* to take judgment for the [reduced amount] only." Koenigsberger v. Richmond Silver Mining Company, 1895, 158 U.S. 41, 53,[4] 15 S.Ct. 751, 756, 39 L.Ed. 889. (Emphasis supplied.)

In Gasoline Products Co., Inc. v. Champlin Refining Co., 1931, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188, the Supreme Court said that, when a verdict was correct in law but erroneous on the question of damages, a new trial could be had to determine only the amount of damages saying,

> "[T]he Seventh Amendment does not exact the retention of old forms of procedure * * *. It does not prohibit the introduction of new methods for ascertaining what facts are in issue * * * or require that an issue once correctly determined * * * be tried a second time, even though justice demands that another distinct issue, because erroneously determined, must again be passed on by a jury." 283 U.S. at 498, 51 S.Ct. at 514.

The obvious purpose behind this decision was the unwritten law of conservation of judicial energy: it would be a waste of time to retry the issue of liability.

What the defendants seek here runs counter to that pattern. The defendants wish to introduce evidence of what has happened since the trial and in addition to add evidence to alter or supplement the evidence the jury considered concerning what had happened before the trial. If the defendants were permitted to open the record to introduce additional evidence concerning the amount of damages, the plaintiff should also be allowed to add to the record: indeed the Court of Appeals' reference to introduction of evidence by the plaintiff concerning the West Virginia corporation makes the plaintiff's claim in this regard stronger than the defendants' claim. Therefore granting the motion would result in a hearing before the Court alone on the question of damages. The evidence at

---

4. The defendants seek to find some solace in this case on the basis that the Court did not say that if the Court held a hearing after a jury trial, this would violate the Seventh Amendment. But the court had no need even to comment on this. After the trial in the lower court was completed, affidavits were filed in the record. The circuit court "declined to consider the affidavits used in support of the motion for new trial * * *." 158 U.S. at 45, 15 S.Ct. at 753. It affirmed the trial court's judgment provided the plaintiff would remit one-half the amount. An exception was reserved to the court's refusal to consider the affdiavits and the Supreme Court observed that the question had become unimportant in view of the action taken by the circuit court.

this hearing would consist of the record at the prior trial, the new evidence offered by the plaintiff, and the new evidence offered by the defendant. The Court would not then determine damages. It would only decide how much the plaintiff must remit if the plaintiff wishes to avoid a new trial. This is a far cry from the cases cited by the defendant in which the court heard evidence after judgment or after remand, for in each of these cases the trial was by the court and it could make a final determination of the issues involved.[5] Here the Court's action could not be final, and the plaintiff would be compelled to undergo a partial new trial as a consequence of a procedure designed to give him a choice either of taking a remittitur or of having a new trial.

To fix a remittitur without any additional evidence gives the plaintiff a free bite at the apple. He can take what the court decides or he can turn it down and have another go at the jury. But that is precisely the right the Court of Appeals decision gives him. And that is the right he still would have if new evidence were heard concerning the amount of the remittitur.

The defendants suggest that the Seventh Amendment comes into play only when the plaintiff has decided whether to reject the remittitur: He may then insist upon a jury trial. If this were so, then the Supreme Court's opinions in the *Northern Pacific Railroad Company, Arkansas Valley Land Company, Koenigsberger,* and *Gasoline Products* cases indeed missed the obvious point. The

proposition assumes that because the plaintiff in this case has had one jury trial, and, sooner or later will be given the choice either of taking as his award what the court suggests or having another jury trial, the Seventh Amendment has no bearing on what goes on in between. Stating the proposition answers it. But if more is needed it is provided by the text of the Amendment: it does not say litigants have a right eventually to a trial by jury nor merely that the right of trial by jury shall be preserved; it adds "[N]o fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

In Dimick v. Schiedt, 1935, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603, the Supreme Court reviewed the rules of the common law established at the time of the adoption of the Seventh Amendment in 1791.

"In actions for mayhem, there are numerous ancient cases to be found in the year books, and occasional cases at a somewhat later period, in which the right of the court to increase damages awarded plaintiff, *super visum valneris,* is recognized * * * [T]he application for the increase was made by the plaintiff, considered upon a view of his wound, and, when favorably acted upon, granted absolutely and not as a condition upon which to base a denial of a new trial. Indeed, the practice of granting new trials in such cases did not come into operation until a later date. In any event, the rule was obsolete in England at the time of the

5. See, e. g., Kneipp v. United States, D. D.C., 1949, 85 F.Supp. 902, rev'd and remanded, 87 U.S.App.D.C. 242, 1950, 184 F.2d 263, aff'd, 1953, 92 U.S.App. D.C. 187, 203 F.2d 397 (Taking of new evidence by the trial court on remand was held permissible in a tax refund case tried by the court without a jury); McClure v. O. Henry Tent & Awning Co., 7 Cir., 1950, 184 F.2d 636, 7 Cir., 1951, 192 F.2d 904 (The trial court was said to be free to take additional evidence in a case in which the trial court was itself determining the damages resulting from breach of contract); A. C. Becken Co.

v. Gemex Corporation, 7 Cir., 1959, 272 F.2d 1, N.D.Ill., 1961, 199 F.Supp. 544, N.D.Ill., 1962, 204 F.Supp. 28, 7 Cir., 1963, 314 F.2d 839 (In an anti-trust case heard by the trial court without a jury, it was proper under the circumstances for the court alone to consider new evidence in determining damages.); Lemonier v. Coco, 1959, 237 La. 760, 112 So. 2d 436 (On remand to determine damages for an improperly constructed dwelling, the trial court, which was sitting without a jury, could consider new evidence as to the value of the dwelling when sold.).

adoption of the Constitution; and we are unable to find that it ever was acted upon or accepted in the colonies, or by any of the federal or state courts since the adoption of the Constitution." 293 U.S. at 477, 55 S.Ct. at 297.

The *Dimick* case dealt with the power of a federal trial court, which had found damages awarded by a jury to be inadequate, to condition an order for a new trial on the defendant's consent to an increase in damages. The defendant contended that, "[O]ur federal courts from a very early day have upheld the authority of a trial court to deny a motion for new trial because damages were found to be excessive, if plaintiff would consent to remit the excessive amount, and that this holding requires us to recognize a similar rule in respect of increasing damages found to be grossly inadequate." 293 U.S. at 482, 55 S.Ct. at 299.

The Court reviewed the federal cases dealing with remittitur starting with the opinion by Mr. Justice Story in Blunt v. Little, 1822, Fed.Cas. No. 1578, 3 Mason. 102. The Court found so little authority for the remittitur practice that it said:

"In the light reflected by the foregoing review of the English decisions and commentators, it therefore may be that if the question of remittitur were now before us for the first time, it would be decided otherwise. But, first announced by Mr. Justice Story in 1822, the doctrine has been accepted as the law for more than a hundred years and uniformly applied in the federal courts during that time. And, as the English courts prior to the adoption of the Constitution, we may assume that in a case involving a remittitur, which this case does not, the doctrine would not be reconsidered or disturbed at this late day.

"Nevertheless, this court in a very special sense is charged with the duty of construing and upholding the Constitution; and, in the discharge of that important duty, it ever must be alert to see that a doubtful precedent be not extended by mere analogy to a different case if the result will be to weaken or subvert what it conceives to be a principle of the fundamental law of the land." 293 U.S. at 484–485, 55 S.Ct. at 300.[6]

A rump hearing by the court of the type here sought would indeed extend the remittitur practice by "analogy to a different case." "Where the verdict is excessive, the practice of substituting a remission of the excess for a new trial is not without plausible support in the view that what remains is included in the verdict along with the unlawful excess—in that sense that it has been found by the jury—and that the remittitur has the effect of merely lopping off an excrescence." 293 U.S. at 486, 55 S.Ct. at 301. But to base a remittitur on a separate hearing by the court would be far more than "lopping off an excrescence."

Because the question raised by the motion here has apparently never been considered before, there is no direct authority that the procedure suggested violates the Seventh Amendment except the text of the Amendment itself. But that should be authority enough, particularly since 176 years have now elapsed since the Amendment was adopted and during this period there has been no reported effort to do what is here sought to be done. It is my view that the procedure suggested is unconstitutional. However, I do not base my decision on this point alone. Since constitutional theory long ago anticipated the doctrine now current in foreign affairs of avoiding direct confrontation,[7] I consider as the first ques-

---

6. See generally Carlin, Remittiturs and Additurs, 49 W.Va.L.Q. 1 (1942). Compare 48 Harv.L.Rev. 333 (1934) ; 44 Yale L.J. 318 (1934) ; 32 Mich.L.Rev. 538 (1934). See also Henderson, Background of the Seventh Amendment, 80 Harv.L. Rev. 289 (1966) ; 13 Stan.L.Rev. 383 (1961) ; 30 Texas L.Rev. 242 (1951).

7. Proprietors of Charles River Bridge v. Proprietors of Warren Bridge, 1837, 36 U.S. (11 Peters) 420, 553, 9 L.Ed. 773.

tion whether the ends of justice clearly require reopening the record.

The defendants urge that the question of reopening the record is one of my discretion and good judgment. In exercising that discretion, I must ask what the situation would be if it were the plaintiffs who were seeking to introduce new evidence to influence the remittitur upward. I doubt that granting the motion commends itself as orderly judicial procedure in either case. Of course, in either event—whether new evidence is offered by plaintiff or by defendants—it might well help the court to arrive at the amount of damages. It will indeed be difficult to arrive at a correct assessment of the amount of the remittitur from the record alone especially since another judge presided at the trial. But if the plaintiff is to have the option to elect another trial, as the Court of Appeals decided, he should not be required to undergo an intermediate hearing by the Court alone at this stage. The discretion the defendants concede I have I exercise to deny the motion.

See also Ashwander v. Tennessee Valley Authority, 1936, 297 U.S. 288, 346– 347, 56 S.Ct. 466, 80 L.Ed. 688 (Brandeis, J., concurring) and cases there cited.